**GRANGE INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Cheryl GRAHAM, Chester Graham, Elsie Dilts, William Dilts, Sandra Adams, Francis Adams, Denise Graham, Ronald Morris, Peggy Huddleston and Carl Huddleston, Appellees–Plaintiffs.**

No. 45A05–0505–CV–268.

Court of Appeals of Indiana.

March 14, 2006.

Rehearing Denied April 27, 2006.

Carolyn M. Trier, Fort Wayne, for Appellant.

Andrew A. Crosmer, Rubino Crosmer Smith & Sersic, Dyer, for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Grange Mutual Casualty Company (Grange) appeals a grant of summary judgment in favor of Cheryl, Denise, and Chester Graham, Elsie and William Dilts, Sandra and Francis Adams, Ronald Morris, and Peggy and Carl Huddleston (collectively referred to as Appellees) in a personal injury lawsuit. We restate the single issue presented for review as follows: Are Appellees entitled to underinsured motorist coverage when the tortfeasor's liability insurance has paid a per accident limit that is equal to the per accident limit of the policy under which all of the appellees seek to recover?

We reverse and remand with instructions.

The facts in the present case are not in dispute. On July 27, 2002, Cheryl Graham was operating a vehicle eastbound on Route 231 in Crown Point, Indiana, when her vehicle collided with a vehicle being driven by Amanda Hildenbrandt. Elsie Dilts, Sandra Adams, Peggy Huddleston, and Denise Graham were passengers in the vehicle Cheryl Graham was operating, which was owned by Sandra Adams. Tina Mikuly owned the vehicle Hildenbrandt was driving.

Mikuly, the tortfeasor for purposes of this case, was insured under an automobile policy issued by Indiana Insurance Company, with liability limits of $100,000 per person and $300,000 per accident. Indiana Insurance paid to Appellees its total per-accident policy limits of $300,000. They divided that sum among themselves, with the result being that each received less than the damages they claim to have suf-

fered, and less than the per-person limit of Adams's policy.

Adams was insured under an automobile policy issued by Grange with underinsured limits identical to the liability limits of the tortfeasor's policy, i.e., underinsured limits of $100,000 per person and $300,000 per accident. That policy states, in pertinent part:

Limit of Liability

A.  The limit of Bodily Injury Liability shown in the Declarations for 'each person' for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one insured in any one auto accident. Subject to this limit for 'each person,' the limit of bodily injury liability shown in the Declarations for 'each accident' for uninsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. The limit of Property Damage Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all property damage resulting from any one accident. This is the most we will pay regardless of the number of:

1.  Insureds;

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the accident.

B.  The maximum we will pay under this coverage is the lesser of:

1.  the difference between;

    a.  the amount paid in damages to the insured by or for any person or organization who may be

liable for the insured's bodily injury; and

b. the per person limit of coverage provided in this policy; or

2. the difference between;

a. the total amount of damages incurred by the insured; and

b. the amount paid by or for any person or organization for the uninsured's bodily injury.

*Appellant's Appendix* at 43. Appellees sought to collect under Adams's underinsured coverage. Grange denied the claim on grounds that Mikuly's vehicle was not an "underinsured vehicle" within the meaning of the Grange policy. In their second amended complaint, Appellees alleged that, in denying the claim, Grange breached the insurance contract.

On November 3, 2004, Grange filed a motion for summary judgment, asking the court to find as a matter of law that Mikuly's vehicle was not an underinsured motor vehicle within the meaning of the Grange policy. In response, Appellees filed a motion in opposition to summary judgment, in which they asked the court to grant summary judgment in their favor on that question. On March 1, 2005, the court denied Grange's motion for summary judgment and granted Appellees' motion, thereby ruling that Mikuly's car was an underinsured motor vehicle within the meaning of the Grange policy. Grange challenged the court's ruling via a motion to correct error. The trial court denied that motion. Upon appeal, Grange challenges the trial court's determination that Mikuly's vehicle was an underinsured vehicle within the meaning of the Grange insurance policy.

Summary judgment is appropriate only where the evidence demonstrates that no genuine issue of material fact exists and therefore the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party has the prima facie burden of designating sufficient evidence to eliminate any genuine factual issues. *Coffman v. PSI Energy, Inc.,* 815 N.E.2d 522 (Ind.Ct.App.2004), *trans. denied.* After that has been accomplished, the burden shifts to the nonmoving party to produce evidence to the contrary. *Id.* As was true in the trial court, we will construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Id.*

The instant controversy requires this court to construe the meaning of an insurance policy. When called upon to do so, we have described our task as follows:

The interpretation of an insurance contract is primarily a question for the court. "Although some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 527 (Ind.2002) (citing *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985)). When ambiguity is present, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. However, an ambiguity is not established simply because a controversy exists and the insured asserts an interpretation contrary to that asserted by the insurer. We must accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions.

*Castillo v. Prudential Prop. & Cas. Ins. Co.,* 834 N.E.2d 204, 206 (Ind.Ct.App.2005) (some citations omitted).

Grange contends that underinsured motorist coverage is not available to Appellees because a per-accident, limit-to-limit comparison between Appellees' insurance and the tortfeasor's insurance reveals that the limits are equivalent; therefore, the tortfeasor was not "underinsured." Citing *Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884 (Ind.Ct.App.1994), Grange further contends that a per-accident, limit-to-limit comparison is proper in this situation because multiple injured parties are seeking coverage under the same policy. In *Allstate,* this court determined that when two injured claimants received, in the aggregate, the per-accident limit from the tortfeasor in an amount equal to the per-accident underinsured motorist limit of their own insurance, the tortfeasor was not "underinsured" and therefore they were not entitled to underinsured motorist insurance proceeds.

Appellees counter with authority they claim compels the opposite result. Citing *Corr v. American Family Ins.*, 767 N.E.2d 535, 539 (Ind.2002), Appellees contend the question of whether the tortfeasor was an underinsured motorist must be determined not by comparing the insured's limits with the amount *theoretically* available under the tortfeasor's policy, but instead by examining what the Supreme Court termed "the amount actually available" for payment to the insured under the tortfeasor's policy. The Court concluded that if the amount actually available to the individual insureds under the tortfeasor's policy was less than the insured's per-person policy limit, then the tortfeasor's vehicle is underinsured. Thus, the question as framed by the parties is which of the two applies, *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884 or *Corr v. American Family Ins.,* 767 N.E.2d 535? We conclude that both cases are instructive, because the facts of this case combine factual elements of both *Corr* and *Allstate Ins. Co.*

Superficially, both *Corr* and *Allstate Ins. Co.* involve multiple insureds whose individual damages, in the aggregate, exceeded the maximum per-accident limit of the tortfeasor's liability coverage. For purposes of deciding the issue before us, the same is true in the instant case. The question in those cases and this is, does such render the tortfeasor's vehicle an underinsured motor vehicle? *Corr* answered that question in the affirmative. In that case, though, the facts were somewhat different from those before us in the instant case.

In *Corr,* although several parties were injured or killed, the policy at issue covered only one of the accident victims. The parents of that victim, who was killed, received their portion of the proceeds from the tortfeasor's insurer, which paid the full limits of the tortfeasor's policy. Those limits were divided among several victims, including the decedent's parents, and did not adequately compensate the decedent's parents. Moreover, the amount paid to the parents was less than the per-accident limit of their own separate underinsurance policies with American Family Insurance. Therefore, each of them submitted a claim with American Family under their respective underinsured motorist policies. American Family denied those claims on grounds that the tortfeasor's vehicle was not underinsured. The Supreme Court determined that the tortfeasor's vehicle *was* underinsured because the insureds' policies provided underinsured limits that exceeded the amount paid to the parents by the tortfeasor. The amount received from the tortfeasor, though less than the per-person limit, was the maximum amount available from that source because the per-accident limit of the tortfeasor's policy had to be split among several claimants.

Although there were multiple victims in *Corr*, the legal question involved a policy covering only one of those victims. Under those circumstances, the Supreme Court held that "if the amount actually available for payment to the insured from the tortfeasor's bodily injury liability policies is less than the policy limits of the insured's underinsured motorist coverage[,]" then the tortfeasor's vehicle was underinsured. *Corr v. Shultz*, 767 N.E.2d 541 (Ind.2002).

Unlike the factual setting present in *Corr*, the one in the instant case involves multiple claimants under a single policy. This situation is more akin to the one present in *Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884. There, two men (the Sanderses) were injured in a traffic accident. The tortfeasor's insurer paid the liability policy limits of $50,000 per person and $100,000 per accident to the Sanderses, but those limits did not fully compensate them for their injuries. Therefore, the Sanderses filed a claim against their own insurer, Allstate, under the underinsurance portion of that policy. The Allstate policy limit was $100,000 per accident. Allstate denied the claim upon grounds that its limit of $100,000 per accident was equal to the per-accident limit of the tortfeasor's policy, and therefore the tortfeasor's vehicle was not an underinsured motor vehicle. The trial court granted the motion and the Sanderses appealed. The Sanderses argued that because the tortfeasor's policy contained a $50,000 per-person limit, and their own Allstate policy contained a $100,000 per-accident limit (the Allstate policy apparently contained no separate per-person limit), the tortfeasor's vehicle was underinsured by $50,000. This court rejected that argument, concluding that the determinative comparison in that circumstance, i.e., where more than one claimant sought recovery under a single policy, was the per-accident limits of the insured's and the tortfeasor's policies. Be-

cause those two amounts were the same in *Allstate Ins. Co. v. Sanders*, the court concluded the tortfeasor was not an underinsured vehicle.

■ *Corr v. American Family Ins*. did not overrule *Allstate Ins. Co. v. Sanders*. Indeed, the Supreme Court acknowledged as much in stating, "[i]n [*Allstate Ins. Co. v. Sanders* ] both injured parties were insured by the same UIM policy. *Under those circumstances the per accident limits may have been relevant.*" *Corr v. American Family Ins.*, 767 N.E.2d at 538 (internal citation omitted) (emphasis supplied). Reading *Corr* and *Allstate Ins. Co.* together, a guiding principle emerges, and that principle was stated succinctly in *Allstate Ins. Co.*, viz., "the [uninsured/underinsured motorist coverage] statute's focus is on placing the insured in the position he would have occupied if the tortfeasor had liability coverage equal to [the insured's] underinsured motorist limits." *Allstate Ins. Co. v. Sanders*, 644 N.E.2d at 887. Although the Supreme Court did not utilize the above language, its holding is consistent with this precept. Indeed, this comports with the statutory definition of "underinsured motor vehicle" which "includes an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident[.]" Ind.Code Ann. § 27-7-5-4(b) (West, PREMISE through 2005 1st Reg. Sess.).

■ Applying this principle to the instant case, all of the individual appellees in this action seek to recover under a single underinsured motorist policy. Accordingly, we look not only to the per-person limitation with respect to each individual claimant, but also to the per-accident limit

with respect to the total of all of the claims. If Appellees had recovered only under the Adams policy, their total recovery would have been capped at $300,000. In this scenario, assuming each of the five claimants (counting only the occupants of the Adams vehicle, and not their spouses) was entitled to the same amount, their individual recoveries would be capped at $60,000, which represents one fifth of the per accident limit of Adams's policy. That is precisely the same amount they recovered under Mikuly's liability insurance policy. The goal here, as the Supreme Court indicated, is to "give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance[.]" *Corr v. American Family Ins.*, 767 N.E.2d at 540. As discussed above, "adequate" in this context is defined by the insured's underinsurance policy. Paraphrasing that statement, and consistent with *Corr* and *Allstate Ins. Co.*, we conclude that the goal in situations such as this is to give the insured at least the same coverage as if his or her own underinsurance policy was the only one that applied. In this case, if only Adams's policy applied (i.e., if Mikuly was uninsured), the total amount available to all appellees combined would be $300,000. That was precisely the amount distributed under Mikuly's policy. Therefore, Mikuly's was not an underinsured vehicle, and Appellees were not entitled to collect pursuant to the underinsured motorist provision of Adams's policy. The trial court erred in ruling otherwise. We reverse the decision of the trial court and remand with instructions to grant Grange Mutual Casualty Company's motion for summary judgment.

Judgment reversed and remanded with instructions.

VAIDIK, J., and SULLIVAN, J., concur.