**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued June 4, 2007
Decided June 26, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3802

| | |
|---|---|
| ELIZABETH DEICH-KEIBLER and LARRY K. HALER, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Southern District of Indiana, New Albany Division. |
| *v.* | |
| | No. 04 C 5 |
| BANK ONE and RBC MORTGAGE COMPANY, *Defendants-Appellees*. | Sarah Evans Barker, *Judge*. |

**O R D E R**

The plaintiffs, Elizabeth Deich-Keibler and Larry Haler, brought this action against the defendants, Bank One and RBC Mortgage Co. ("RBC"), alleging violations of the Employee Retirement Income Security Act ("ERISA") by Bank One and violations of Indiana statutory and common law by both Bank One and RBC in connection with Bank One's sale of its brokered mortgage loan sales division ("Division") to RBC in June 2003. On cross-motions for summary judgment, the district court granted judgment in favor of Bank One and RBC on each of the

plaintiffs' claims.  The plaintiffs now appeal.  For the reasons set forth in this order, we affirm.

# I

# BACKGROUND

## A.

In June 2003, Bank One and RBC entered into an agreement whereby Bank One would sell the Division to RBC.  RBC viewed employing Bank One's employees as advantageous, given the employees' established customer relationships; therefore, RBC planned to offer positions to Bank One's employees in the Division. To facilitate RBC's hiring, the sales agreement prohibited Bank One, for a period of 180 days, from soliciting for employment those Division employees to whom RBC offered jobs ("no-hire provision").

At the time of the sale, the plaintiffs worked in the Division.  The plaintiffs were offered jobs by RBC, but rejected the offers.  The plaintiffs attempted to find other positions in Bank One, as they had when prior reorganizations by Bank One eliminated the positions they had occupied, but were told that Bank One could not offer them employment under the sales agreement.

The plaintiffs then sought benefits from Bank One's Pay Continuation Plan ("Plan").  The Plan provided severance pay and other benefits to terminated Bank One employees.  Following an amendment in 2002, however, the Plan did not provide benefits to terminated employees when the employee was terminated in connection with the sale of a portion of Bank One's business and the purchasing company offered the employee work pursuant to a requirement of the sales agreement.  Because the plaintiffs had been offered employment by RBC under the terms of the sales agreement between RBC and Bank One, the plaintiffs were denied benefits under the Plan.

## B.

The plaintiffs then brought this action against RBC and Bank One.  They asserted an Indiana common law claim against RBC for tortious interference with their employment contracts with Bank One.  The plaintiffs further asserted that the no-hire provision was an unlawful restraint of trade in violation of Indiana statutory and common law.  The plaintiffs also contended that Bank One wrongfully had denied them benefits under the Plan and that Bank One had discharged them in retaliation for attempting to exercise their rights under the Plan in violation of ERISA § 510, 29 U.S.C. § 1140.

The parties filed cross-motions for summary judgment. The district court concluded that the plaintiffs had failed to come forward with evidence that RBC had acted without justification when it purchased the Division, resulting in the plaintiffs' termination from Bank One. Therefore, the court held, RBC was entitled to summary judgment in its favor on the plaintiffs' tortious interference claims. The court further concluded that, because the plaintiffs had presented no evidence of an antitrust injury as a result of the agreement between RBC and Bank One, RBC and Bank One were entitled to summary judgment on the plaintiffs' Indiana statutory antitrust claims. The court also concluded that the no-hire provision did not constitute an unreasonable restraint of trade, thereby entitling RBC and Bank One to summary judgment on the plaintiffs' Indiana common law restraint of trade claims. Next, the court concluded that Bank One was entitled to summary judgment on the plaintiffs' ERISA denial of benefits claims because Bank One's denial of the plaintiffs' claims for benefits under the Plan was not arbitrary and capricious. Lastly, the court determined that the plaintiffs had failed to rebut Bank One's legitimate, non-discriminatory explanation for terminating the plaintiffs, and, therefore, Bank One was entitled to summary judgment on the plaintiffs' ERISA discriminatory termination claims.

## II

## DISCUSSION

The plaintiffs now appeal the district court's decision granting summary judgment in favor of RBC and Bank One. The plaintiffs first contend that RBC tortiously interfered with their contract rights with Bank One by inducing Bank One to terminate them in connection with the sale of the Division. The plaintiffs next contend that the no-hire provision of the sales agreement constituted an unreasonable restraint on trade in violation of Indiana's antitrust statutes and common law. The plaintiffs also appeal the district court's conclusion that Bank One had not discriminated against the plaintiffs for attempting to exercise their rights under ERISA. The plaintiffs have abandoned their claim of wrongful denial of benefits under ERISA on appeal.

We review a district court's grant of summary judgment de novo. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 712 (7th Cir. 2007). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For those claims brought under Indiana law, we shall apply "Indiana law as we believe the Supreme Court of Indiana would if faced with the same issue." *Clark*, 473 F.3d at 712. On cross-motions for summary judgment, we view all facts and draw all reasonable inferences therefrom in the light most favorable to the party against whom the motion is made. *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006). The non-

moving party must come forward with evidence of specific facts demonstrating a genuine issue for trial with respect any issue for which that party bears the ultimate burden of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).


## A. Plaintiffs' Tortious Interference Claims

The plaintiffs first contend that RBC tortiously interfered with their employment relationship with Bank One. Indiana recognizes a cause of action for tortious interference with a party's employment contract. *Trail v. Boys & Girls Clubs of N.W. Indiana*, 845 N.E.2d 130, 138 (Ind. 2006). This cause of action extends to an employees' rights under at-will employment contracts, such as those between Bank One and the plaintiffs. *See id.* The plaintiffs must establish the following to make out a claim for tortious interference with a contractual relationship: (1) the existence of a valid, enforceable contract; (2) the defendant's knowledge of the contract's existence; (3) the defendant's intent to induce a breach of that contract; (4) the absence of justification; and (5) damages resulting from the defendant's inducement to breach the contract. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994). To establish that a defendant acted without justification, the plaintiff must establish that the resulting breach was "malicious and exclusively directed to the injury and damage of another." *Bilimoria Computer Sys., LLC v. America Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005). Additionally, because the contract at issue here is an at-will employment contract, the plaintiffs also must "show that the defendant interferer acted intentionally and without a legitimate business purpose." *Trail*, 845 N.E.2d at 138 (citing *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 285 (Ind. 1991)).

The primary issue here is whether RBC acted without justification when it induced Bank One to terminate the plaintiffs in conjunction with the sale of the Division to RBC. The plaintiffs have come forward with no evidence that RBC was motivated by malice or an intent to injure or damage the plaintiffs. Indeed, RBC offered both plaintiffs positions and it is undisputed that RBC considered employment of Bank One's employees a key part of its business strategy. Furthermore, the plaintiffs recognize that RBC's decision to purchase Bank One's operations was a legitimate business interest: expanding RBC's own business. Because the plaintiffs cannot establish that RBC acted without justification and without a legitimate business purpose, RBC is entitled to summary judgment on the plaintiffs' claim of tortious interference with their employment contracts with Bank One.[1]

---

[1] The plaintiffs also submit that the no-hire provision offends public policy because it violates the Thirteenth Amendment's prohibition on slavery and

(continued...)

## B. Indiana Statutory Antitrust Claims

The plaintiffs next assert that the no-hire provision was an unlawful restraint of trade on the part of RBC and Bank One, in violation of Indiana's antitrust act, I.C. § 24-1-2-1, et seq. The act provides for a private right of action by individuals injured as a result of violations of the act. *Id.* § 24-1-2-7. The elements of a private action for violation of the Indiana act are: "1) a violation of the statute, 2) injury to a person's business or property proximately caused by the violation, and 3) actual damages." *City of Auburn v. Mavis*, 468 N.E.2d 584, 585 (Ind. Ct. App. 1984). The second element of a private action also requires a showing of "antitrust injury": "the type of injury which the antitrust laws intend to prevent and the type of injury which naturally flows from what makes the defendant's acts unlawful." *Id.* at 586; *see also Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 597 (Ind. Ct. App. 2002).

The plaintiffs concede that they cannot demonstrate an antitrust injury, but contend that, because they are private individuals as opposed to corporations, they should be permitted to recover without demonstrating antitrust injury. Because this claim arises under Indiana law, we must decide the issue "as we believe the Supreme Court of Indiana would if faced with the same issue." *Clark*, 473 F.3d at 712. In doing so, we may look to the decisions of the Indiana courts that construe the Indiana antitrust statute. *Id.* We have found nothing in the decisions of the Indiana courts of appeals to indicate that the Supreme Court of Indiana would create the exception urged by the plaintiffs.

Further, such an exception would be inconsistent with the statute authorizing a private right of action for violations of the Indiana act. This statute provides a private right of action for "[a]ny person who shall be injured in his business or property by any person or corporation *by reason of the doing* by any person or persons of *anything forbidden or declared to be unlawful*" by the Indiana act. I.C. § 24-1-2-7 (emphasis added). The text of the statute makes clear that the private action provides recovery for injuries only when the violation of the act is the reason for the injury. What the act forbids or declares unlawful are schemes, contracts or combinations that restrain trade, as that concept is understood in federal antitrust law. *See* I.C. § 24-1-2-1; *see also Rumple v. Bloomington Hosp.*, 422 N.E.2d 1309, 1315 (Ind. Ct. App. 1991) (noting that the Indiana act was modeled after section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and has been interpreted consistent with the Sherman Act). It follows that the anti-competitive conduct must be the reason for the plaintiffs' injuries for their claims to fall within I.C. § 24-1-2-7.

---

[1](...continued)
involuntary servitude by preventing the plaintiffs from seeking employment with Bank One. We deem this contention frivolous and shall not address it further.

Thus, there is nothing in the statute or the decisions of the courts of Indiana to support the view that the Supreme Court of Indiana would waive the element of proof of an antitrust injury for individuals in the plaintiffs' position. Because the plaintiffs cannot demonstrate antitrust injury, RBC and Bank One are entitled to summary judgment in their favor on the plaintiffs' Indiana statutory antitrust claims.

## C. Indiana Common Law Restraint of Trade Claims

The plaintiffs also assert Indiana common law restraint of trade claims against RBC and Bank One. Before enacting its antitrust statutes, Indiana recognized a common law private right of action in those individuals injured by acts in restraint of competition. *See Knight & Jillson Co. v. Miller*, 87 N.E. 823, 827-28 (Ind. 1909). The Indiana courts have held that the Indiana antitrust statute was intended to be declarative of the common law prohibition against restraint of trade. *See id.* at 827. Indiana has no modern cases involving the common law tort of restraint of trade distinct from the elements of an action under Indiana's antitrust statutes.[2] Because the Indiana antitrust statutes are considered to be declarative of the common law, *see id.*, there is no reason to believe that the elements of a common law action for restraint of trade differ from those of a statutory cause of action. Therefore, because the plaintiffs cannot establish a claim under Indiana's antitrust statute, their common law restraint of trade claims also fail.

## D. Plaintiffs' ERISA Discriminatory Discharge Claims

Lastly, The plaintiffs allege that Bank One discharged them in order to prevent or otherwise discriminate against them from exercising their rights under the Plan in violation of ERISA § 510.[3] They assert two distinct theories in support

---

[2] The plaintiffs cite *Fort Wayne Cleaners & Dryers Ass'n v. Price*, 137 N.E.2d 738 (Ind. Ct. App. 1956) (en banc), for the proposition that a party may pursue both common law and statutory actions for restraint of trade. Although *Fort Wayne Cleaners* involved both common law and statutory claims, nothing in the decision suggests that the common law claims were for the tort of restraint of trade. A close reading of the case suggests that the common law claims in that case were for tortious interference with business relations, a separate tort that remains actionable in Indiana. *See id.* at 741-42 ("There can be no doubt in [Indiana] that it is an actionable wrong to interfere, either directly or indirectly, with the business of another without cause or justification . . . .").

[3] Section 510 provides, in pertinent part:

(continued...)

of this claim.  The plaintiffs first contend that the sale of the Division itself violated ERISA § 510 because the sale was motivated by a desire to prevent all of the Division's employees from exercising their rights under the Plan.

We have not addressed the issue of whether the sale of a division may constitute a violation of § 510.  However, the Court of Appeals for the District of Columbia Circuit has held that a party may establish a violation of § 510 under such circumstances, but "only by showing that some ERISA-related characteristic special to the unit . . . was essential to the firm's selecting the unit for closure or sale." *Andes v. Ford Motor Co.*, 70 F.3d 1332, 1338 (D.C. Cir. 1995).  Bank One met its initial burden on summary judgment by pointing to the absence of evidence that denial of the plaintiffs' *benefits* under the plan was essential to Bank One's decision to sell the Division.  *See Celotex*, 477 U.S. at 325.  In short, to survive summary judgment, the plaintiffs were required to come forward with evidence of specific facts to raise a genuine issue of fact as to whether Bank One intended to discriminate against this particular division because of some characteristic of the benefit plan.  *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  The plaintiffs have not provided such evidence.  Therefore, Bank One was entitled to summary judgment in its favor on this theory.

The plaintiffs also advance a theory of disparate treatment in support of their claim that Bank One discharged them in violation of ERISA § 510.  They contend that Bank One either awarded benefits or allowed other employees of the Division who did not request benefits under the Plan to remain at Bank One.

The plaintiffs attempt to establish their theory of disparate treatment under the indirect method of proof using the burden-shifting analysis of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), which we have applied to ERISA § 510 claims.  *See Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 135 (7th Cir. 1997).  To proceed under this approach, the plaintiff must first establish a prima facie case of discrimination "by demonstrating that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present." *Id.*  If the plaintiff makes this prima facie showing, the burden shifts to the employer to present a legitimate, non-discriminatory reason for

---

[3](...continued)
It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.

its action. *Id.* The burden then shifts back to the plaintiff to demonstrate that the proffered explanation is pretext.

The plaintiffs have not made a prima facie case of discrimination or retaliation. The record demonstrates that the plaintiffs were notified that they would be terminated before any request for benefits was made. Further, there is no indication in the record that Bank One was aware that the plaintiffs intended to request benefits under the Plan at the time it discharged them. Such circumstances do not provide a "basis for believing that the prohibited intent to retaliate was present." *Id.*

Assuming that the plaintiffs have met their initial burden of establishing a prima facie case of discrimination, Bank One has come forward with a legitimate, non-pretextual explanation. Bank One explains that its decision to terminate the plaintiffs was the result of selling the Division. To meet their burden on summary judgment to demonstrate that Bank One's proffered reason was pretext, the plaintiffs must come forward with "evidence of specific facts that call into question the veracity" of Bank One's proffered reasons. *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 827 (7th Cir. 2006) (applying the *McDonnell-Douglas* burden-shifting analysis in the context of racial discrimination).

The plaintiffs attempt to meet this burden by pointing to three comparison employees. The first comparison employee, Chris Shrader, also was terminated by Bank One as a result of the sale to RBC, but allegedly received benefits under the Plan. The fact that Shrader also was terminated supports Bank One's proffered reason that the plaintiffs were terminated because of the sale. The plaintiffs submit no evidence regarding second comparison employee, Leo Liberio. Rather, the plaintiffs simply assert their belief that Liberio either still works for Bank One or received benefits under the Plan. Such unsupported beliefs do not constitute evidence of specific facts for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e). The third comparison employee, Jerry Bevers, formerly worked in the Division but now works for Chase Home Finance, a successor corporation to Bank One. The plaintiffs provide no specific facts with respect to how Bevers came to work there. In short, these comparisons provide no evidence of specific facts that would call into question the veracity of Bank One's proffered non-discriminatory explanation. Therefore, Bank One is entitled to summary judgment in its favor on the plaintiffs' disparate treatment theory of ERISA discrimination.

## Conclusion

The decision of the district court granting summary judgment in favor of Bank One and RBC is affirmed.

AFFIRMED