

I N   T H E

# Court of Appeals of Indiana

Michael Cline and Jacob Sofronko,

*Appellants-Plaintiffs*

v.

Everest National Insurance Company,

*Appellee-Defendant*



FILED

May 28 2026, 8:52 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

May 28, 2026

Court of Appeals Case No.
25A-CT-1976

Appeal from the Jay Superior Court

The Honorable Gail M. Dues, Judge

Trial Court Cause No.
38D01-2407-CT-11

---

**Opinion by Judge Kenworthy**
Judges Bradford and Pyle concur.

**Kenworthy, Judge.**

## Case Summary

[1] During the scope of their employment, Michael Cline and Jacob Sofronko (collectively, "Plaintiffs") were seriously injured in an automobile accident with an at-fault, underinsured motorist. Plaintiffs' employer had a commercial automobile policy with Everest National Insurance Company ("Everest") that provided $1,000,000 in underinsured motorist ("UIM") coverage. After the tortfeasor's insurer paid its bodily injury liability limit of $300,000, Plaintiffs filed complaints seeking UIM coverage from Everest and declaratory judgment that they were entitled to $1,000,000 in UIM coverage. Everest moved for summary judgment, arguing it was entitled to a setoff of $300,000 and the maximum UIM coverage available to Plaintiffs was $700,000. The trial court granted judgment in Everest's favor.

[2] Cline now appeals, arguing the trial court erred in determining the amount of UIM coverage available to Plaintiffs. We affirm.

## Facts and Procedural History

[3] On May 19, 2023, Cline and Sofronko were employees of Ohio Valley Gas Corporation. Sofronko was driving and Cline was a passenger in a company-owned dump truck when it collided with a commercial cargo van at the intersection of State Road 26 and County Road 200 West in Jay County. Plaintiffs were ejected from the truck and suffered serious personal injuries. The van's driver, Roberto Rosa Pagan, died.

[4] Pagan was at fault for the accident, as he had failed to stop at the intersection's stop sign and yield to the truck. Pagan was insured by a Shelter General Insurance Company ("Shelter") policy with a bodily injury liability coverage limit of $300,000. Cline and Sofronko each received $150,000 from the $300,000—sums insufficient to cover their losses.

[5] At the time, Plaintiffs were insured by their employer's commercial automobile insurance policy with Everest. The Everest policy includes a UIM coverage endorsement with a $1,000,000 per accident limit. (It has no separate per person limit.) The endorsement provides: "The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible[.]" *Appellant's App. Vol. 2* at 124.

[6] In July 2024, Cline filed a two-count complaint against Everest seeking declaratory judgment that he was entitled to UIM coverage and alleging Everest engaged in unfair settlement practices by failing to extend a fair settlement offer. The trial court granted Sofronko's motion to be joined as a party.

[7] Everest offered to settle the claims for $700,000, representing the UIM coverage available to Plaintiffs after a setoff for the $300,000 Shelter payment. In a second amended complaint, Cline abandoned his unfair settlement practices claim but requested declaratory judgment that the total amount of UIM coverage available to Plaintiffs was $1,000,000. In October 2024, the parties executed a partial release, and Everest paid Plaintiffs the undisputed UIM limits

of $700,000. This effectively narrowed the case to a dispute over whether Everest owed Plaintiffs an additional $300,000 of UIM coverage.

[8] Cline moved for declaratory judgment on the calculation of UIM coverage, and Sofronko joined the motion. Everest in turn moved for summary judgment on the issue and designated as evidence the Everest policy, UIM endorsement, Plaintiffs' complaints, and the partial release. The parties filed responses and replies, and the trial court held a hearing on the motions. In a combined order, the trial court found there was no genuine issue of material fact and "$700,000 is the maximum amount . . . Everest owes in [UIM] Limits to Plaintiffs under [the] policy in connection with the May 2023 accident." *Id.* at 3. The trial court granted final judgment in Everest's favor. Only Cline appeals.

## The total UIM coverage available to Plaintiffs is $700,000.

[9] A party seeking summary judgment must establish "the designated evidentiary matter shows . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We review a trial court's summary judgment decision *de novo*, applying the same standard as the trial court. *U.S. Automatic Sprinkler Corp. v. Erie Ins. Exch.*, 204 N.E.3d 215, 220 (Ind. 2023). In doing so, we consider only the evidence designated to the trial court and draw all reasonable inferences in the non-movant's favor. *Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 863 (Ind. 2022).

[10] In Indiana, insurance policies are subject to the same rules of interpretation as other contracts. *Id*. at 864. We construe ambiguous policy provisions in favor

of the insured, but "we give clear and unambiguous language in a policy its plain and ordinary meaning." *Id*. "The interpretation of an insurance policy is primarily a question of law for the court, and therefore well-suited for summary judgment." *Id*. at 863.

As the trial court found, there is no genuine issue of material fact. The parties agree on the following:

- Pagan was legally responsible for the accident.

- Pagan's insurance company paid its bodily injury liability coverage limit of $300,000 to Plaintiffs, with each receiving $150,000.

- $300,000 was insufficient to cover Plaintiffs' losses.

- Pagan's vehicle was underinsured.

- Plaintiffs are "insureds" under the Everest policy.

- The Everest policy provides UIM coverage with a per accident limit of $1,000,000.

*See Appellant's App. Vol. 2* at 2–3. The issue presented to the trial court and on appeal, therefore, is a discrete legal question about the proper calculation of UIM coverage available to Plaintiffs under the Everest policy.

Everest argues that under the terms of the UIM endorsement, it is entitled to a setoff for the $300,000 Shelter paid Plaintiffs, leaving only $700,000 in coverage available to Plaintiffs. Everest's position is based on the UIM endorsement

language, which includes a setoff provision for all liability payments made to its insureds:

### D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit shown in this endorsement.

2. The Limit of Insurance under this coverage shall be *reduced by all sums paid or payable by or for anyone who is legally responsible*, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

4. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

*Id.* at 124 (emphasis added).

[13]     We agree with Everest's straightforward application of the unambiguous contract language. The limit of insurance under the UIM endorsement is $1,000,000, but the limit is reduced by "all sums" paid by or for anyone who is "legally responsible," in this case, Pagan. Accordingly, Everest is entitled to a setoff for the entire $300,000 payment made by Pagan's insurer, Shelter. This reduces the limit of UIM coverage available to Plaintiffs under the Everest policy to $700,000. *See, e.g., Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 531 (Ind. 2002) (holding the language "Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible" unambiguously provides setoffs are taken from the policy limit); *Medley v. Am. Econ. Ins. Co.*, 654 N.E.2d 313, 316 (Ind. Ct. App. 1995) (holding the phrase "limit of liability will be reduced by all sums paid" is unambiguous and provides for a reduction of UIM policy limits by the total liability payments made), *trans. denied*; *Gardner v. State Farm Mut. Ins. Co.*, 589 N.E.2d 278, 282 (Ind. Ct. App. 1992) (holding a UIM policy provision allowing for a setoff of "the amount paid all insureds" means the coverage limit is reduced by the total amount of all liability payments to all insureds, even where one insured makes no claim for UIM coverage), *trans. denied*.

[14]     Cline does not argue for a different interpretation of the insurance contract terms or contend the policy language is ambiguous. Cline instead mounts a statutory and common-law challenge, arguing the Indiana Supreme Court's opinion in *Lakes v. Grange Mutual Casualty Company*, 964 N.E.2d 796 (Ind. 2012), requires UIM coverage calculations to be performed on an individual

claimant basis, irrespective of the Everest policy's aggregate setoff provision. Under Cline's approach, he recovered $150,000 from Shelter, and therefore he is entitled to $850,000 in UIM coverage under the Everest policy. Similarly, the Everest policy provides Sofronko with $850,000 in UIM coverage after his $150,000 recovery from Shelter. According to Cline, Plaintiffs together are entitled to a total of $1.7 million in UIM coverage; but because the UIM coverage limit in the Everest policy is $1,000,000 per accident, Plaintiffs' recovery is limited to $1,000,000.

[15]     In *Lakes*, several family members were injured in a two-car accident with a tortfeasor. 964 N.E.2d at 797. The primary question in that case was whether the tortfeasor's vehicle was "underinsured" as that term is statutorily defined.[1] Under *Lakes*, this determination depends on a comparison of the liability payments actually received by an individual claimant and the per person coverage limit of the UIM endorsement. *Id*. at 805. Here, it is clear (and undisputed) Pagan's vehicle is "underinsured" as defined by statute and explained in *Lakes*. Under any calculation, the $150,000 Cline and Sofronko each received from Shelter's $300,000 payment is far less than the $1,000,000 UIM coverage limit in the Everest policy.

---

[1] "For the purpose of this chapter, the term underinsured motor vehicle, subject to the terms and conditions of such coverage, includes an insured motor vehicle where the *limits of coverage available for payment to the insured* under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle as defined in subsection (a)." Ind. Code § 27-7-5-4(b) (1993) (emphasis added).

[16] Cline, however, contends *Lakes* not only controls the analysis of *whether* Pagan's vehicle was underinsured but also extends to the *calculation* of the UIM coverage available to Plaintiffs. *See Appellant's Br.* at 10 (Cline arguing the *Lakes* Court "also held that the same analysis of using only each individual claimant applied to determining the amount payable for UIM benefits"). Cline's argument is based on a footnote in *Lakes* about Indiana Code Section 27-7-5-5, which concerns limitations on uninsured and underinsured motorist coverage.

[17] "The underinsured motorist statute sets forth the minimum and maximum amount of coverage an insurance company is obligated to provide to a victim who has not been fully compensated for his injuries." *Medley*, 654 N.E.2d at 314. As to the minimum, the statute provides:

> (a) The policy or endorsement affording coverage specified in this chapter may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss, but in no event may coverage be less than the minimum set forth in IC 9-25-4-5.[2]

I.C. § 27-7-5-5(a) (1993). UIM coverage must be made available in limits of not less than $50,000. I.C. § 27-7-5-2(a) (2020). Again, there is no dispute the UIM endorsement of the Everest policy provides Plaintiffs coverage above the

---

[2] The statutory minimum liability coverage for bodily injury or death is currently $25,000 per person or $50,000 per accident. *See* I.C. § 9-25-4-5(1)–(2) (2017).

statutory minimum, as in this case Plaintiffs are entitled to $700,000 collectively and $350,000 individually (assuming an equal division).

[18] As to the maximum amount of UIM coverage payable to an insured, the statute states:

> (c) The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:
>
> > (1) the difference between:
> >
> > > (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
> > >
> > > (B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or
> >
> > (2) the difference between:
> >
> > > (A) the total amount of damages incurred by the insured; and
> > >
> > > (B) the amount paid by or for any person or organization liable for the insured's bodily injury.

I.C. § 27-7-5-5(c). In other words, an individual claimant's recovery under a UIM policy is limited to either the UIM per person coverage limit (minus a setoff equal to the individual's recovery from the legally responsible party) or the individual's total damages (minus the same setoff)—whichever is less. This

statute embodies the principle that an individual plaintiff cannot recover more than their damages or the per person UIM coverage limit. *Lakes* confirms this section of the statute sets caps on an individual claimant's recovery. *See* 964 N.E.2d at 804 n.3 (citing I.C. § 27-7-5-5(c)) (observing "the *statutory caps* on UIM benefits payable are concerned only with each individual claimant, regardless of whether there are other claimants") (emphasis added). Assuming Cline's damages alone exceed $1,000,000, the statutory maximum Cline could recover is $850,000, representing the $1,000,000 limit minus the $150,000 Shelter payment to him. Because $700,000 does not exceed this individual statutory cap, the policy's setoff provision is consistent with the statute.

[19] Cline, however, reads Section 27-7-5-5(c) and the *Lakes* footnote as providing a formula for calculating the amount of per person UIM insurance Everest *must* provide to each claimant, rather than capping an individual plaintiff's recovery. And he interprets the statute and case law together to prohibit a UIM insurer from reducing coverage by the aggregate liability payments made by any legally responsible party.

[20] Contrary to Cline's assertion, this is not what the statute requires or *Lakes* holds. The statutory language "is indicative not of the legislature's intent to provide a set formula, but to provide maximum and minimum parameters for the amount of damages a plaintiff is entitled to as a result of an underinsured motorist claim." *Gardner*, 589 N.E.2d at 281. Put differently, Indiana Code Section 27-7-5-5(c) sets a ceiling on what an individual may recover; it does not prescribe how a UIM insurer must calculate its aggregate available coverage. And an

insurer may still limit its liability to an insured through the policy terms. *See id.* at 282 ("An insurer, however, is free to limit liability to its insureds in any manner that is not inconsistent with public policy and which does not violate statutory mandates."); *Lakes*, 964 N.E.2d at 805 (acknowledging "the per-accident limits come into play only to limit the insurer's liability to the claimants"). So long as insurance policy language comports with our state statutes, the policy language controls. *Justice v. Am. Fam. Mut. Ins. Co.*, 4 N.E.3d 1171, 1177 (Ind. 2014). Therefore, "if by applying a [UIM insurer's] 'per accident' provision, its coverage is still within the statutory parameters, the policy does not violate the underinsured motorist statute." *Gardner*, 589 N.E.2d at 281.

[21] Here, after the $300,000 setoff for "all sums paid" by or for Pagan, the UIM coverage available to Plaintiffs under the Everest policy is $700,000. As that sum is more than the statutory minimum of $50,000 and does not violate the statutory maximum on individual recovery, the policy language governs. *See Justice*, 4 N.E.3d at 1176 ("[W]here an insurer crafts a policy using clear and unambiguous language that comports with public objectives expressed in state statute, we apply that plain language, even if the result is to limit the insurer's liability."); *see also Gardner*, 589 N.E.2d at 281–82.

[22] Finally, Cline contends Everest's policy renders the UIM coverage illusory, because under no circumstances will Everest pay the full $1,000,000 limit. "Coverage under an insurance policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances." *Haag v.*

*Castro*, 959 N.E.2d 819, 824 (Ind. 2012) (citation omitted). Here, $700,000 in benefits is available to Plaintiffs, so the UIM coverage under the Everest policy is not illusory.

[23] Under the plain and ordinary language of the unambiguous UIM endorsement, Everest is entitled to a $300,000 setoff. The maximum UIM coverage benefit available to Plaintiffs under the Everest policy is $700,000. Accordingly, the trial court did not err in granting judgment in Everest's favor.

## Conclusion

[24] We affirm the trial court's judgment in favor of Everest.

[25] Affirmed.

Bradford, J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANT CLINE

Jason A. Shartzer
Shannon B. Mize
Shartzer Law Firm LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Pamela A. Paige
Plunkett Cooney, P.C.
Indianapolis, Indiana

Stephen P. Brown
Plunkett Cooney, P.C.
Bloomfield Hills, Michigan